```
             IN THE UNITED STATES DISTRICT COURT
              FOR THE SOUTHERN DISTRICT OF OHIO
                        EASTERN DIVISION
```

Rondale Drain,                       :

    Plaintiff,                   :

  v.                                 :        Case No. 2:10-cv-0025

Michael J. Astrue,                   :        JUDGE SARGUS
Commissioner of Social Security,
                                     :
    Defendant.

## REPORT AND RECOMMENDATION

### I. Introduction

    Plaintiff, Rondale Drain, filed this action seeking review of a final decision of the Commissioner of Social Security ("Commissioner") denying his applications for social security disability benefits and supplemental security income. Those applications were filed on April 28, 2005, and alleged that plaintiff became disabled on April 15, 2004.

    After initial administrative denials of his claim, plaintiff was afforded a video hearing before an Administrative Law Judge on May 14, 2008. In a decision dated June 13, 2008, the Administrative Law Judge denied benefits. That decision became the final decision of the Commissioner when the Appeals Council denied review on December 23, 2009.

    Plaintiff thereafter timely commenced this civil action. The record of administrative proceedings was filed in this Court on March 18, 2010. Plaintiff filed a statement of specific errors on April 19, 2010, to which the Commissioner responded on June 23, 2010. Plaintiff filed a reply brief on June 24, 2010, and the matter is now ripe for decision.

### II. Plaintiff's Testimony

    Plaintiff was 33 years old at the time of the administrative hearing. He is a high school graduate but took special education

classes. (Tr. 291). He testified to problems with eating and drinking and to muscle pain in his leg that restricts his ability to sit. (Tr. 292-93). He is able to alternate sitting and standing. (Tr. 293). He can walk two miles, lift five to ten pounds, and bend, crawl and reach with both arms. (Tr. 293-95).

Plaintiff also testified to problems with attention. (Tr. 295-96). He takes various medications including blood pressure medication. (Tr. 297). He has difficulty breathing which interferes with his ability to sleep and to move heavy objects. (Tr. 299). He uses an inhaler for his asthma. (Tr. 299-300). He could not recall the last time he had an asthma attack. (Tr. 301). Lifting objects over fifteen pounds in weight, and sometimes walking, make him short of breath. (Tr. 306).

### III.  The Medical Records

The pertinent educational and medical records show the following. Since the focus of plaintiff's argument in this Court is that the Commissioner erred in finding that he did not meet the requirements of listing 12.05(C) that pertain to mental retardation, the Court will summarize only the records pertinent to that claim.

Plaintiff was given IQ tests at various times while in school. In third grade, it appears that he was in special education classes, and his full-scale IQ was 65. In sixth grade, there is no mention of his educational placement, and his full-scale IQ was 74, although he scored 65 on the verbal portion of the test. In ninth grade, he was again in special classes, and his full-scale IQ was 63. In twelfth grade, it was 68. (Tr. 112).

Plaintiff underwent a psychological evaluation on February 21, 2003, at the request of the Franklin County Department of Job and Family Services. At that time he "presented with notable cognitive deficits" affecting his ability to give the examiner

(Dr. Tilley) a medical and personal history.  He believed he had been identified with learning disabilities early in his educational career and believed he may have been in special education classes.  He had last worked in 2001 at a Burger King.  He claimed to be suffering from heart problems.  His language skills were consistent with limited intellectual functioning.  He could read and spell at a second-grade level and do numerical operations at a third-grade level.  His full-scale IQ was measured at 66 and he was placed in the "extremely low" range of intellectual functioning.  Only his performance IQ score of 70 fell in the borderline range, with the rest of the sub-tests falling in the extremely low range.  Given his school history and these tests results, mental retardation was strongly suspected, but the examiner described efforts to "procure a measure of the patient's adaptive functioning" as "unsuccessful" (apparently due to the inability to get a functional assessment form completed by plaintiff's girlfriend) and therefore no definitive diagnosis of mental retardation was made.  (Tr. 120-28).

     Plaintiff underwent a second, similar evaluation in March, 2005, which was also performed by Dr. Tilley.  He reported having worked at a JC Penney warehouse in 2003 and 2004 moving boxes, and also having worked at the Ohio State Fair in the summer of 2003.  His prior IQ test was accepted as valid.  Again, it could not be determined if he was suffering from borderline intellectual functioning or mild mental retardation due to the lack of such a diagnosis prior to age 22.  (Tr. 131-38).

     Plaintiff was examined by Dr. Woskobnick on June 7, 2005.  Although the primary purpose of the examination was to assess plaintiff's physical condition, Dr. Woskobnick noted that plaintiff was a poor historian who had difficulty relating his medical history and that he was developmentally delayed, with mental retardation being the "most likely" cause.  (Tr. 144-46).

A state agency reviewer considered these records and, on July 22, 2005, concluded that plaintiff's functioning was "suggestive of Borderline Intellectual Functioning as he was able to maintain employment for a significant amount of time, only stopping due to physical complaints." (Tr. 155-58). However, that same reviewer completed a form indicating that plaintiff suffered from both mental retardation and borderline intellectual functioning. (Tr. 159-172).

## IV.  The Expert Testimony

A medical expert, Dr. Marquis, testified at the administrative hearing. He stated that plaintiff did suffer from mental retardation. (Tr. 300). However, he did not see evidence in the record of any other significant impairment, and thought plaintiff could do simple tasks on a sustained basis without any social interaction problems. (Tr. 302-03).

A vocational expert, Ms. Kehr, also testified at the administrative hearing. She characterized plaintiff's past work as a sorter as either medium or heavy and unskilled. (Tr. 307). His work as a stock clerk was light and unskilled, and his work as a fast food manager was medium and unskilled. (Tr. 309). She was asked about a hypothetical person of plaintiff's age, education and work experience who could do a limited range of light work, with restrictions on lifting more than ten pounds and climbing ropes or scaffolds. That person also could do only simple, routine tasks. She testified that such a person could not do any of plaintiff's past relevant work but could do a number of unskilled sedentary jobs. (Tr. 312)

## V.  The Administrative Decision

In the administrative decision, the Commissioner found that plaintiff suffered from severe impairments including borderline intellectual functioning, controlled hypertension, and asthma controlled medicinally. The Commissioner further found that

plaintiff could perform sedentary work although he required a sit-stand option and could do only unskilled tasks. With these limitations, plaintiff could not do his past relevant work. However, based on the vocational expert's testimony, the Commissioner found that plaintiff could perform approximately 4,100 jobs as described by the expert. Consequently, plaintiff was found not to be disabled.

## VI.  Legal Analysis

In his statement of errors, plaintiff raises a single issue. He argues that the Commissioner had no basis for determining that he did not meet the requirements of section 12.05(C) of the Listing of Impairments, which requires a finding of disability if a claimant suffers from mental retardation and at least one other severe impairment. This contention is evaluated under the following standard.

Standard of Review. Under the provisions of 42 U.S.C. Section 405(g), "[t]he findings of the Secretary [now the Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive. . . ." Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion'" Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Company v. NLRB, 305 U.S. 197, 229 (1938)). It is "'more than a mere scintilla.'" Id. LeMaster v. Weinberger, 533 F.2d 337, 339 (6th Cir. 1976). The Secretary's findings of fact must be based upon the record as a whole. Harris v. Heckler, 756 F.2d 431, 435 (6th Cir. 1985); Houston v. Secretary, 736 F.2d 365, 366 (6th Cir. 1984); Fraley v. Secretary, 733 F.2d 437, 439-440 (6th Cir. 1984). In determining whether the Secretary's decision is supported by substantial evidence, the Court must "'take into account whatever in the record fairly detracts from its weight.'" Beavers v. Secretary of Health, Education and Welfare, 577 F.2d

383, 387 (6th Cir. 1978) (quoting Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951)); Wages v. Secretary of Health and Human Services, 755 F.2d 495, 497 (6th Cir. 1985).  Even if this Court would reach contrary conclusions of fact, the Secretary's decision must be affirmed so long as his determination is supported by substantial evidence.  Kinsella v. Schweiker, 708 F.2d 1058, 1059 (6th Cir. 1983).

Listing 12.05(C) provides that a claimant is presumptively disabled if the plaintiff scores between 60 and 70 on a valid IQ test, has another significantly limiting impairment, and meets certain diagnostic criteria for mental retardation, particularly the manifestation of deficits in adaptive functioning prior to age 22.  Here, the Commissioner found that plaintiff does have other severe impairments apart from his mental retardation or borderline intellectual functioning, including asthma, and that he is limited by his impairments to the performance of sedentary work with a sit/stand option.  Consequently, the only issue concerning Listing 12.05(C) is whether plaintiff's psychological impairment is more properly characterized as mental retardation or borderline intellectual functioning.

The administrative decision addresses this issue in the following way:

> The undersigned has taken Section Listing 12.05 into consideration.  Section Listing 12.05 pertains to mental retardation that refers to significant subaverage general intellectual functioning with deficits in adaptive functioning during the developmental period; i.e. the evidence demonstrates or supports onset of the impairment before age 22.  The undersigned has reviewed this Section Listing and notes that although the claimant has a history of special education classes and was reported to have learning difficulties, there are no reports or records indicating that the claimant's developmental problems were existent prior to age 22.  Evidence showed that the claimant had full scale IQ 60-74, as noted in evidence form the Columbus Public Schools.  However, as noted by the medical expert that

>was present throughout the hearing, evidence fails to
>show any significant physical impairment during that
>time, which would satisfy the Section Listing (Exhibit
>See Exhibit B1F).  Therefore, in this case, the
>claimant would not meet or equal Section Listing 12.05
>of the regulations.

(Tr. 20).

Plaintiff argues that this rationale is insufficient to support a denial of benefits because, first, the medical expert to whom the administrative decision refers actually diagnosed mental retardation, a diagnosis which, at least under the DSM-IV, necessarily includes a finding that the claimant had deficits in adaptive functioning prior to age 22.  Second, plaintiff asserts that the administrative decision's reference to "developmental problems" instead of "deficits in adaptive functioning" - the terminology actually used in Listing 12.05(C) - indicates that the decision failed to consider the actual criteria contained in the Listing.  Moreover, the very evidence cited by the decision concerning plaintiff's school records, including his consistently low IQ scores, his designation in those records as "DH," and his placement in special education classes, do show "developmental problems" prior to age 22.  Finally, plaintiff contends that the administrative decision's focus on the absence of a significantly limiting physical impairment prior to age 22 is irrelevant because there is no such requirement contained in Listing 12.05(C); under that section, the only impairment which must manifest itself prior to that age is the mental impairment.  If that occurs, once the claimant, as an adult, develops an additional severe impairment, the Listing requires a finding of disability.

The Commissioner concedes that the finding by the ALJ that plaintiff had no other significant impairments prior to age 22 is not relevant to whether Listing 12.05(C) has been met.  However,

-7-

the Commissioner argues that the ALJ was entitled to rely on the medical expert's testimony that the Listing was not met, and the absence of a definitive diagnosis in the record of mental retardation.  The Commissioner also argues that the ALJ could reasonably have found that plaintiff does not suffer from mental retardation given the level of adaptive functioning which he demonstrated over a lifetime of working and fairly independent living.

 Neither of these arguments is persuasive.  First, plaintiff is correct that the only reason the medical expert testified that he did not meet the requirements of this Listing is that he could not comment on the existence of a separate and limiting physical or other mental disorder, and not that plaintiff did not suffer from mental retardation.  On this latter issue, he clearly testified that plaintiff did meet that portion of the Listing.  Thus, once the Commissioner found that plaintiff had a separate and limiting physical condition, the Commissioner could not rely on the medical expert's testimony as a basis for finding that Listing 12.05(C) had not been satisfied.

 Second, although there might be evidence in the record supporting a finding that plaintiff did not manifest the type of deficits in adaptive functioning prior to age 22 that support a diagnosis of mental retardation, the administrative decision was not based on such evidence.  The types of adaptive functioning to which the Listing refers include communication, self-care, home living, social/interpersonal skills use of community resources, self-direction, functional academic skills, work, leisure, health, and safety. <u>See Hayes v. Commissioner of Social Security</u>, 357 Fed. Appx. 672, *5 (6th Cir. December 18, 2009), citing to the DSM-IV-TR, at 49.  The administrative decision makes no reference to any of these factors, instead focusing exclusively on the irrelevant question of whether plaintiff

suffered from a separate and limiting physical impairment prior to age 22.  This focus is not, as the Commissioner's memorandum in opposition suggests, harmless error.  Rather, the administrative decision made a clear error of law in both taking into account matters that are not pertinent to the question of whether Listing 12.05(C) was satisfied, and failing to explore the question of whether the record contains evidence of deficits in the relevant areas of adaptive functioning which would support a diagnosis of mental retardation - a diagnosis that was made by the testifying expert, deferred by Dr. Tilley, and apparently not accepted by the state agency reviewer.  Thus, a remand is needed so that the Commissioner can acknowledge the apparent conflict in the record on this issue and analyze whether a fair reading of the record supports, or does not support, a diagnosis of mental retardation.

## VII.  Conclusion

Based on the foregoing, it is recommended that the plaintiff's statement of errors be sustained to the extent that this case be remanded to the Commissioner for further proceedings pursuant to 42 U.S.C. §405(g), sentence four.

## VIII.  PROCEDURE ON OBJECTIONS

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s).  A judge of this Court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made.  Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence

or may recommit this matter to the magistrate judge with instructions.  28 U.S.C. §636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and Recommendation <u>de novo</u>, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation.  <u>See Thomas v. Arn</u>, 474 U.S. 140 (1985); <u>United States v. Walters</u>, 638 F.2d 947 (6th Cir. 1981).


          <u>/s/ Terence P. Kemp</u>
          United States Magistrate Judge